UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

MAR 2 2 2023

JUDGE JOHN F. KNESS
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 385 |
| v. | |
| MAX SCHAEFER | Judge John F. Kness |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant MAX SCHAEFER, and his attorney, ADAM SHEPPARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with attempting to distribute a controlled substance, namely, 50 grams or more of methamphetamine (actual), in violation of Title 21, United States Code, Section 846 (Counts 1-4).

3. Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the information, which charges defendant with attempting to knowingly and intentionally distribute a controlled substance, namely, 50 grams or more of methamphetamine (actual), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 846.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about November 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant MAX SCHAEFER did attempt to knowingly and intentionally distribute a controlled substance, namely, 50 grams or more of methamphetamine (actual), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841, in violation of Title 21, United States Code, Section 846.

More specifically, on or about November 26, 2020, SCHAEFER met with Individual A at a casino located in Hammond, Indiana for the purpose of receiving a payment of $10,000 in cash from Individual A in exchange for a future shipment of methamphetamine from SCHAEFER to Individual A. Later on the evening of

2

November 26, 2020, Individual A sent a text message to SCHAEFER directing SCHAEFER to ship the methamphetamine to an address on the 400 block of W. Barry Avenue in Chicago, Illinois. On or about November 28, 2020, SCHAEFER boarded a flight from Chicago to Los Angeles for the purpose of purchasing methamphetamine from one or more suppliers in the Los Angeles area. Between November 28, 2020 and November 30, 2020, SCHAEFER purchased at least two pounds of methamphetamine from Supplier B, a methamphetamine supplier in the Los Angeles area from whom SCHAEFER had previously purchased methamphetamine.

On or about November 30, 2020, SCHAEFER packaged approximately 771 grams of methamphetamine (actual) in multiple clear vacuum-sealed plastic bags, which SCHAEFER concealed in two manila-colored bubble mailers placed inside of a single green-colored three-ring binder. Later that day, SCHAEFER traveled to a post office in Los Angeles, California and mailed the green-colored three-ring binder containing approximately 771 grams of methamphetamine (actual) to the address on the 400 block of W. Barry Avenue in Chicago specified by Individual A. On or about December 2, 2020, SCHAEFER exchanged additional text messages with Individual A to determine whether the parcel had arrived.

Additionally, in approximately May 2020, SCHAEFER began obtaining multi-pound quantities of methamphetamine from suppliers in Los Angeles and mailing parcels containing methamphetamine to customers in Illinois, Indiana, Michigan, and Florida.

3

More specifically, from approximately May 2020 through approximately November 2020 (prior to the above-referenced shipment of 771 grams of methamphetamine on or about November 30, 2020), SCHAEFER shipped methamphetamine from California to addresses provided by Individual A in Chicago and elsewhere at least approximately five times. On average, SCHAEFER sent approximately one pound of methamphetamine (approximately 453 grams) in each shipment, in exchange for payments of $3,500 to $4,000 per pound.

Additionally, from August 2020 through December 2020, SCHAEFER shipped at least approximately one kilogram of methamphetamine (actual) from post offices in California to addresses in Chicago provided by Individual C in exchange for payments of approximately $3,500 to $4,000 per pound of methamphetamine from Individual C. More specifically, on or about August 13, 2020, SCHAEFER shipped approximately eight ounces (approximately 226 grams) of methamphetamine to an address in Chicago designated by Individual C. On or about August 19, 2020, SCHAEFER shipped approximately four ounces (approximately 113 grams) or methamphetamine to an address in Chicago designated by Individual C. On or about August 31, 2020, SCHAEFER shipped a parcel containing approximately seven ounces (approximately 198 grams) of methamphetamine from a post office in Los Angeles, California to an address provided by Individual D, who agreed to accept methamphetamine on behalf of Individual C. On or about September 8, 2021, SCHAEFER shipped a parcel containing approximately four ounces (approximately

113 grams) of methamphetamine from a post office in Los Angeles to SCHAEFER's own address in Chicago, and instructed Individual C to pick up the parcel from SCHAEFER's residence. On or about December 3, 2020, SCHAEFER shipped approximately 437 grams of methamphetamine (actual) from a post office in Palm Springs, California to an address in Chicago, Illinois designated by Individual C.

On or about April 8, 2021, SCHAEFER flew from Chicago to Los Angeles with Individual D for the purpose of obtaining methamphetamine that Individual D could distribute to Individual D's customers in Chicago. On or about April 9, 2021, SCHAEFER obtained approximately two pounds of methamphetamine from one of SCHAEFER's suppliers in the Los Angeles area and then provided the methamphetamine to Individual D, in exchange for promised payments of $3,500 per pound. On or about April 26, 2021, SCHAEFER shipped an additional two packages containing a total of approximately 1,329 grams of methamphetamine (actual) from a post office in Los Angeles, California, to addresses in Chicago, Illinois, specified by Individual D, in exchange for payments from Individual D of approximately $3,500 to $4,000 per pound of methamphetamine. SCHAEFER obtained the methamphetamine he shipped to the addresses Individual D specified from Supplier E, a methamphetamine supplier located in the Los Angeles area who SCHAEFER paid approximately $2,100 per pound of methamphetamine.

SCHAEFER also purchased methamphetamine from other sources and distributed methamphetamine to other recipients. Specifically, SCHAEFER

5

purchased a total of approximately two pounds of methamphetamine from Supplier F. SCHAEFER purchased quantities of methamphetamine ranging from one-to-three pounds from Supplier G on approximately five occasions and on one occasion, in exchange for a payment of $1,000, SCHAEFER brokered the sale of approximately five pounds of methamphetamine from Supplier G to Individual H, a resident of New York, in exchange for a payment of $20,000 from Individual H to Supplier G. SCHAEFER obtained a total of approximately five pounds of methamphetamine from Supplier K, typically in one-pound increments. On at least one occasion, SCHAEFER also purchased methamphetamine from Supplier L, who SCHAEFER knew to supply methamphetamine to Supplier K. SCHAEFER also purchased approximately one pound of methamphetamine from Supplier M. The methamphetamine SCHAEFER purchased from Supplier M was delivered to SCHAEFER by Supplier E. SCHAEFER purchased approximately one pound of methamphetamine on two separate occasions from Supplier O. SCHAEFER purchased approximately one pound of methamphetamine on one occasion from Supplier P.

From July 2020 through October 2020, SCHAEFER mailed approximately two parcels containing a total of approximately two pounds of methamphetamine to an address in Florida provided by Individual I, in exchange for approximately $8,360 in payments from Individual I. SCHAEFER supplied approximately 7-14 grams of methamphetamine per month to Individual J and Individual Q, both of whom are Chicago residents. From August 2020 through October 2020, SCHAEFER supplied

Individual R, a Michigan resident, with a total of approximately two pounds of methamphetamine (approximately 907 grams). In approximately December 2020, SCHAEFER shipped approximately one pound of methamphetamine to Individual N at Individual N's residence in Chicago.

SCHAEFER acknowledges that the total amount of methamphetamine (actual) he distributed or attempted to distribute as summarized above was at least 4.5 kilograms of methamphetamine (actual).

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. This offense also carries a maximum fine of $10,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

8

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

    b.    **Offense Level Calculations.**

        i.    The base offense level is 38, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(1), because the offense of conviction and relevant conduct for which the defendant is accountable involved at least 4.5 kilograms of methamphetamine (actual).

        ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant

is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        iv.    Based on the evidence now known to the government, the parties agree, subject to the Court's approval, that Guideline § 5C1.2 and Title 18, United States Code, Section 3553(f) are applicable, and that the Court shall impose a sentence without regard to any statutory minimum sentence, and the offense level shall be reduced by two levels, pursuant to Guideline § 2D1.1(b)(18).

    c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level, is 33 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 135 to 168 months' imprisonment, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence 10 years' imprisonment, if the Court determines that it applies.

    e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that

further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

12. Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include

11

providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this agreement, then the government shall move the court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range in an amount to be determined <u>by the government</u> at the time of sentencing. Defendant shall be free to recommend any sentence.

14. If the government does not move the Court, pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), if applicable, to depart from the applicable guideline range and the statutory minimum sentence, if applicable, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence, if it applies, without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not

withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1 or 18 U.S.C. § 3553(e), if applicable.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 385.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

19. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

## Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

14

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.  **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), defendant also waives his right to

16

challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and

shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing

18

financial statements and supporting records as requested by the United States Attorney's Office. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of

limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 2/13/2023

ERIKA CSICSILA
Digitally signed by ERIKA CSICSILA
Date: 2023.01.04 11:37:29 -06'00'

Erika L. Csicsila on behalf of
JOHN R. LAUSCH, JR.
United States Attorney

PATRICK MOTT
Assistant U.S. Attorney

MAX SCHAEFER
Defendant

ADAM SHEPPARD
Attorney for Defendant